Anne K. Heublein and Gilbert W. Heublein v. Commissioner.
Heublein v. Commissioner
Docket No. 52190.
United States Tax Court
T.C. Memo 1955-288; 1955 Tax Ct. Memo LEXIS 48; 14 T.C.M. (CCH) 1111; T.C.M. (RIA) 55288; October 27, 1955
*48 Stanley Ide LaCov, Esq., 165 Broadway, New York, N. Y., for the petitioners. James R. McGowan, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $2,972.26 for 1950 and $3,977.04 for 1951. The only question for decision is the propriety of claimed deductions in the taxable years for certain amounts alleged to have been paid by petitioner Gilbert W. Heublein, a medical doctor, to two other doctors in his employ. A second question raised by petitioners with respect to the application of the statute of limitations to the year 1951 in that the deficiency notice for that year was not mailed within three years after the filing of the return was not argued and is deemed to be abandoned. Findings of Fact A portion of the facts have been stipulated, are so found and the stipulated facts are incorporated herein by reference. Petitioners are husband and wife. Their income tax returns for the taxable years were filed with the collector of internal revenue for the district of Connecticut. Gilbert W. Heublein (hereafter called the petitioner), Ellwood Watson Godfrey and Louis Bernstein *49 were at all relevant times physicians practicing in Hartford, Connecticut. Prior to February 11, 1947, the petitioner had become a specialist in radiology and was the owner of valuable radiological equipment. On February 11, 1947, the petitioner entered into a written agreement with Doctors Godfrey and Bernstein calling for their services as employees through the year 1951. In part, the agreement provided as follows: "WHEREAS, said Heublein desires to continue said association in said practice with said Godfrey and Bernstein on a strictly sole proprietorship basis during the term hereof, but desires in addition thereto to give said Godfrey and Bernstein an opportunity to share in the profits of said practice on a percentage basis without assuming any of the losses therein and to offer them an opportunity at the expiration of the term of this agreement to enter into partnership with him; and "WHEREAS, said Godfrey and Bernstein desire to continue their association with said Heublein on a strictly sole proprietorship basis but desire to share in the profits of said practice on a percentage basis without assuming any of the losses therein, during the term of this agreement; *50 "NOW, THEREFORE, in consideration of the mutual desires hereinabove contained and of the mutual promises and covenants hereinafter enumerated, the parties hereto do covenant and agree between them as follows: * * *
"2. Said Godfrey and Bernstein shall perform such professional services as said Heublein shall request and they shall observe such reasonable regulations and carry out such instructions as he shall give them. * * *
"4. Each party hereto shall pay over to the office and practice of said Heublein all income received for medical services rendered, from whatever source, and such income shall be included in, and be considered a part of, the gross income of said office and practice of said Heublein. "5. In return for said Godfrey performing said services and for continuing as an associate in the employment of said Heublein, said Heublein shall pay said Godfrey an annual salary of Seven Thousand Dollars ($7,000), payable in equal monthly payments, together with twenty-five per cent (25%) of the yearly net profit of said office and practice, computed on a cash basis from an accounting to be prepared at the end of each month, said percentage and share to be paid *51 to said Godfrey within one month from the date of said accounting. "6. In return for said Bernstein performing said services and for continuing as an associate in the employment of said Heublein, said Heublein shall pay said Bernstein an annual salary of Seven Thousand Dollars ($7,000), payable in equal monthly payments together with twenty-five per cent (25%) of the yearly net profit of said office and practice, computed on a cash basis from an accounting to be prepared at the end of each month, said percentage and share to be paid to said Bernstein within one month from the date of said accounting. * * *
"8. In addition to paying the salaries and percentages hereinbefore set forth, but solely for the purposes hereinafter defined, said Heublein further agrees to credit to said Godfrey and/or Bernstein during the term of this agreement or as long as said Godfrey and/or Bernstein remain associated with said Heublein, whichever period is the shorter, the following percentages to each: "Two per cent (2%) of the net profits of said practice for the calendar year 1948; "Four per cent (4%) of the net profits of said practice for the calendar year 1949; "Six per cent (6%) of *52 the net profits of said practice for the calendar year 1950; and "Eight percent (8%) of the net profits of said practice for the calendar year 1951. "(a) If either said Godfrey or said Bernstein shall be associated with said Heublein on January 1, 1952, each then so associated shall be entitled to a share in a partnership to be formed with said Heublein for the continuance of said office and practice, the value of each such share, if both shall then be associated, not to exceed twenty-four and one-half per cent (24 1/2%) of the appraisal of said office and practice as determined by three disinterested persons as soon as practicable after January 1, 1952, and there shall be applied against the purchase of each share the credits hereinabove set forth. "(b) In the event that either said Godfrey or said Bernstein shall cease to be associated with said Heublein at any time prior to January 1, 1952, any and all contingent right, title and interest in and to said credit shall simultaneously pass and revert to said Heublein. "(c) In the event that either said Godfrey or said Bernstein but not both shall be associated with said Hueblein on January 1, 1952, he shall be entitled to a *53 share in a partnership to be formed with said Heublein for the continuance of said office and practice, the value of such share not to exceed forty-nine per cent (49%) of the appraisal of said office and practice as determined by three disinterested persons as soon as practicable after January 1, 1952, and there shall be applied against the purchase of his share the amount credited to him as hereinabove provided. "(d) In the event that neither said Godfrey nor said Bernstein shall be associated with said Heublein or in the event that either or both of them shall elect not to enter into partnership after January 1, 1952 with said Heublein, then all contingent right, title and interest in and to amounts so credited to said Godfrey and/or said Bernstein as hereinabove provided shall pass and revert to said Heublein. "(e) In the event that said Godfrey and/or Bernstein shall be associated with said Heublein at the time any of the contingencies hereinafter provided for in paragraph 13 occur and they shall desire to exercise the option of purchase contained therein and do exercise said option, the amounts so credited to said Godfrey and/or Bernstein shall be applied towards said purchase. *54 "(f) If either said Godfrey and/or Bernstein shall enter into partnership with said Heublein on or after January 1, 1952, said Heublein shall by the terms of the partnership agreement to be drawn agree to participate equally in the net profits of said office and practice with said Godfrey and/or Bernstein, and hereby does agree to share equally in said net profits upon formation of the partnership with said Godfrey and/or Bernstein, notwithstanding the fact that said Godfrey and/or Bernstein shall only be authorized to purchase a twenty-four and one-half percent (24 1/2%) interest in the assets of said partnership in accordance with the provisions herein. * * *
"10. During the term of this agreement all technical apparatus and medical equipment purchased by said Heublein for said office and practice which is not considered as a normal and ordinary purchase or expense of the operation of said office and practice shall be paid for by said Heublein either from sources of income outside of income from said office and practice or from the share of said Heublein in the net profits of said office and practice. * * *
"17. This agreement shall supersede any and all prior agreements *55 or understandings whether written or oral between the parties hereto as to the matters covered herein. It shall be effective as of January 1, 1947 and shall remain in full force and effect except as hereinabove provided for a period of five years or until sixty days from receipt by said Heublein of written notice from said Godfrey or Bernstein of his or their desire to terminate this agreement. "18. This agreement shall not be construed in any respect as a partnership agreement, but merely as a working agreement between a sole proprietor and his associates in said office and practice." Pursuant to paragraph 8 of this agreement an account was set up on the petitioner's books, entitled "Accrual Fund", in the name of Godfrey; and another account, similarly entitled, was set up in the name of Bernstein. Monthly credit entries were made in these accounts through the close of 1951. The credits in each account were $894.09 for 1948, $1,489.34 for 1949, $3,111.28 for 1950, and $4,644.95 for 1951; and amounted in the aggregate to $10,139.66 on January 1, 1952. On his Federal income tax returns for the taxable years 1948 and 1949, the petitioner deducted as salaries and wages paid the *56 credits to these two "Accrual Fund" accounts. He deducted the amount of $6,222.56 ($3,111.28 for each doctor) in 1950 and $8,875.52 ($4,437.76 for each doctor) in 1951. The petitioner's purchases of radiological and other professional equipment were reflected in accounts maintained as part of a general ledger. These accounts had both debit and credit columns. An account entitled "Professional Equipment, Repair and Service of Professional Equipment", had debit entries in 1948 totalling $527.77. Another account maintained in 1948, entitled "X-Ray Films and Solutions", had debits of $24,431.87. The petitioner's accounts in 1949 reflect debits of $24,401.71 representing the purchase of radiological and related professional equipment in that year. For 1948 and 1949 there were no credit entries in these professional equipment accounts. There were neither debit nor credit entries in the professional equipment accounts maintained in 1950 and 1951. On January 1, 1952, the professional equipment of Heublein was carried on his books at a value of $25,813.85. This value represented the cost of all professional equipment purchased by Heublein between 1947 and 1951, inclusive, less depreciation *57 through 1951. On January 1, 1952, the petitioner retained an attorney to draw up a partnership agreement with Godfrey and Bernstein. The three doctors agreed on the person who would appraise the value of the petitioner's professional equipment. The three doctors were busy in January and February of 1952, and did not discuss the terms of the projected partnership until March 3 of that year. At a meeting on March 3, 1952, a disagreement developed between the petitioner and Bernstein: the petitioner wanted a controlling vote in any major dispute that might arise among the three as partners; Bernstein insisted that he should have an equal voice with the petitioner, and that Godfrey should have a junior status to Bernstein as well as to the petitioner. Early in April of 1952 Godfrey informed the petitioner that he would terminate his association with the petitioner in order to begin practice in Princeton, New Jersey, on or about June 15, 1952. Godfrey continued to work for the petitioner until approximately June 15, 1952. They parted amicably on or about that date. The petitioner and Bernstein had a second meeting on April 15# 95 80 in an attempt to resolve their dispute. Shortly *58 thereafter, on or about May 1, 1952, Bernstein went into practice for himself. When Bernstein and Godfrey parted with the petitioner there was no division of radiological equipment among them; and no payment was made to either by the petitioner in lieu of such a division. Subsequent to June 15, 1952 Godfrey sued the petitioner in the Federal District Court for the District of Connecticut to recover $10,715.18, the amount standing to his credit in the "Accrual Fund" account. The case was ultimately decided by the Court of Appeals for the Second Circuit on February 7, 1955, in an opinion reported as Godfrey v. Heublein (C.A. (2d) 1955) . It was held that Godfrey's election not to enter into the proposed partnership wholly terminated his contingent rights to the accrual fund account and that he could not recover the amount thereof from the petitioner. In the explanatory statement accompanying the deficiency notice the Commissioner held that the amounts in controversy were not deductible as salaries and wages paid inasmuch as the petitioner was on the cash receipts and disbursements basis and the amounts were not paid during the taxable years. Opinion
*59 TIETJENS, Judge: The Commissioner's determination must be sustained. This determination was bottomed on the premise that the petitioner "was on the cash receipts and disbursements basis." There is no evidence in the record to the contrary; neither does the petitioner argue otherwise. The petitioner's theory of his case is that Bernstein and Godfrey, during the years the employment agreement detailed in our findings of fact was in existence, received valuable property and property rights in and to the equipment owned by the petitioner and, accordingly, that the value of such property and rights, measured by the amounts placed in the "Accrual Fund" account each year, constituted taxable income to Bernstein and Godfrey and properly deductible items to the petitioner. We do not agree. There is nothing in the agreement indicating support for the theory. Whatever rights the two doctors acquired in the petitioner's property were wholly contingent on the formation of the proposed partnership. This was never done. In the meantime all income for services rendered was to be paid over to the petitioner and was to belong to him. Paragraph 8 of the agreement, so far as the amounts in question *60 are concerned, simply provided that said amounts be credited to Godfrey and Bernstein, and then, if they were still associated with the petitioner on January 1, 1952, they were to be entitled to a share in a partnership to be formed against the purchase price of which the credited amounts were to be applied. Because of mutual disagreement the partnership was never formed and we fail to see how it can be said that the mere crediting to the accounts of Godfrey and Bernstein in the years 1950 and 1951 amounted to a payment to them by the petitioner. There is nothing in the agreement providing for a pro rata purchase or acquisition of rights by the two doctor employees in the petitioner's property otherwise than by the formation of the partnership and the purchase of interests therein, and, as pointed out above, at the election of the partners this was never done. We thoroughly agree with Judge Hincks' statement of the legal effect of the actions taken by the parties to the agreement made in . "Since, as we hold, there was no breach on the part of the defendant [the petitioner] of his promise to form a partnership *61 with the plaintiff, neither law nor equity entitled the plaintiff to recover the credits. For the credits were monies of the defendant deriving from his practice which were to become available to the plaintiff [Godfrey] only on condition that he should enter into the contemplated partnership. The prior employment contract referred to the plaintiff's rights to the credits as 'conditional rights.' The judgment below involved no forfeiture of plaintiff's rights to the credits. His own unequivocal election in April not to enter into such a partnership wholly terminated his contingent rights thereto. The monies, which at all times had been in the defendant's possession, thereby were released from the plaintiff's contingent rights without need for any affirmative action on the part of the defendant." [Words in brackets added.] The cases relied on by the petitioners are not appropos. Some involve the question of the taxability of property received by the taxpayer and do not come close to this case. Others, which do involve the question of deductions, such as and *62 are concerned with accrual basis taxpayers and are not applicable here. The petitioner here was on a cash basis. Actually he never turned or paid over the amounts in question to Godfrey and Bernstein in the taxable years. Neither did he transfer property rights to them of an equivalent value in those years. The deductions were properly disallowed. Decision will be entered for the respondent.